United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER CARTER, et al.,<br>Plaintiffs,<br>v.<br>PERFORMANCE GOLF PRODUCTS, LLC, et al.,<br>Defendants. | Case No. 26-cv-01784-WHO<br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br>Re: Dkt. Nos. 43, 44, 55 |

Defendants Performance Golf Products, LLC ("Performance Golf") and Blackfish Media, LLC (collectively, "defendants") move to dismiss plaintiffs Peter Carter and Randall Fitkin's (collectively, "plaintiffs") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Plaintiffs allege that the defendants deceptively enrolled them into a monthly subscription service after purchasing one-off golf videos on their website. While their claims may be actionable, each plaintiff assented to an enforceable forum selection clause that requires all cases to be heard exclusively in Broward County, Florida. For the reasons set forth below, defendants' motion to dismiss is GRANTED.[1]

## BACKGROUND

Performance Golf is an "online direct-to-consumer company that markets and sells various golf-related instructional services, training programs, and equipment." Amended Complaint ("Compl.") [Dkt. No. 39] ¶ 20. It sells one-off instructional services and training programs on its website, as well as a "comprehensive digital subscription-based training program called 'Scratch

[1] Defendants' administrative motion to determine the motion to dismiss without oral argument is DISMISSED as moot. *See* Dkt. No. 44. Plaintiffs' administrative motion to file a sur-reply is GRANTED. *See* Dkt. No. 55.

Club' that includes, among other features, access to video lessons, personalized practice plans, and swing analysis." *Id.* ¶¶ 25–27.

To purchase a product on Performance Golf's website, customers must click a checkbox affirming that they "agree to the terms and conditions" of the website, which are hyperlinked in blue:




*Id.* ¶ 36; Declaration of Faraaz Jamal in Support of Joint Motion to Dismiss ("Jamal Decl.") [Dkt. No. 43-1] ¶ 2.[2] Users cannot complete a purchase without agreeing to the Terms of Use. Jamal Decl. ¶ 6.

The Terms of Use contain a forum selection clause, which states:

> These Terms of Use constitute a contract between you and Performance Golf Zone and is governed by the laws of the state of Florida without regard to conflicts of law. Exclusive jurisdiction for any litigation instituted arising out of these Terms of Use shall be solely and exclusively in the county or circuit courts of the state of Florida, with venue exclusively in Broward County, Florida. By

[2] While plaintiffs note that the payment confirmation screen changed around March 2026, *see* Compl. ¶ 36, both versions of the website contain the checkbox and hyperlinked Terms of Use. Defendants confirmed that the Terms of Use in effect at the time of plaintiffs' purchases were "substantially similar to those currently available on the Website in the provisions relevant here." Jamal Decl. ¶ 2.

> accessing this Site you have accepted these Terms of Use, consent to jurisdiction in Broward County Florida for all purposes, and waive the defenses of lack of in personam jurisdiction and forum non conveniens in any legal proceeding.

*Id.* Ex. 1 (Terms of Use) § 1. They also contain a provision regarding Scratch Club memberships, including when customers could cancel or renew their subscriptions:

> **2.1 Trial Subscriptions**
>
> Your Performance Golf Zone membership, which may start with a free trial, will continue month-to-month unless and until you cancel your membership or we terminate it. You must cancel your membership before it renews each month in order to avoid billing of the next month's membership fees. You may cancel your membership by sending an email to support@performancegolfzone.com.
>
> . . .
>
> **Terms of Subscription Renewal**
>
> Trial members receive a 14-day free trial membership to the Scratch Club/Quick Fix Vault. The paying portion of your membership will begin 14 days after your trial has begun. We will continue to bill your Payment Method on a monthly basis for your membership fee until you cancel. To cancel your subscription, send an email to support@performancegolfzone.com.
>
> Monthly Scratch Club/Quick Fix Vault membership subscriptions automatically renew each month at the stated retail price until the subscription buyer sends an email to support@performancegolfzone.com notifying the company that they wish to cancel.

*Id.* § 2.1.

Plaintiffs are two individuals who allege that, "unbeknownst to customers who had only intended to purchase the One Shot Slice Fix," Performance Golf's website "automatically add[ed] the Scratch Club" membership to their purchases—free for 14 days, then for $29 a month. Compl. ¶ 31.[3] They assert the website and Performance Golf's marketing was misleading, as those who did not want a Scratch Club membership would have to "notice that the Scratch Club was added to their purchase, realize that it was an automatically renewing subscription, and take affirmative

[3] Plaintiff Carter is a California resident who alleges he purchased a One Shot Slice Fix training program in March 2022 but did not realize until November 2025 that he had been enrolled in the Scratch Club program and charged $19 per month. Compl. ¶¶ 45–55. Plaintiff Fitkin is a Florida resident who similarly purchased an instructional video from Performance Golf in October 2024 and was unaware he was enrolled in Scratch Club until April 2026. *Id.* ¶¶ 60–68.



United States District Court
Northern District of California

steps to cancel the subscription within the 14 day period after their purchase." *Id.* ¶ 34.

Plaintiffs seek to represent a class of "all persons in the United States who were enrolled into Performance Golf's automatically renewing 'Scratch Club' subscription after purchasing one of Defendants' other products, and were then charged on a monthly basis for the subscription[.]" *Id.* ¶ 88. In the alternative, plaintiffs seek two state subclasses of California and Florida residents who were adversely affected by Performance Golf's conduct. *Id.*

Defendants moved to dismiss plaintiffs' complaint, alleging that the forum selection clause governs this dispute and requires it to be heard in Florida, not California. *See* Joint Motion to Dismiss Amended Complaint ("Mot.") [Dkt. No. 43]. The matter is fully briefed. *See* Plaintiffs' Opposition to Joint Motion to Dismiss ("Oppo.") [Dkt. No. 47]; Reply in Support of Joint Motion to Dismiss Complaint ("Repl.") [Dkt. No. 48]. Plaintiffs moved to file a sur-reply, which I granted and reviewed. *See* Administrative Motion for Leave to File Sur-Reply [Dkt. No. 55]. I held oral argument and the matter was submitted.

## LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

## DISCUSSION

Defendants move to dismiss plaintiffs' complaint on two theories. They first challenge my subject matter jurisdiction over this dispute, arguing that (1) plaintiffs agreed to a forum selection clause that requires this dispute to be heard in Florida, and (2) there is no general or specific jurisdiction over the defendants in this case. Mot. at 3–11. They also argue that plaintiffs fail to adequately plead their claims under Rule 12(b)(6). *Id.* at 11–24. Because I agree with defendants that I lack subject matter jurisdiction, their motion to dismiss is GRANTED under Rule 12(b)(1). I decline to address the plausibility of the claims in the complaint under Rules 12(b)(2) or 12(b)(6).

Federal law governs the enforcement of forum selection clauses in diversity cases. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid and should generally be upheld out of respect for the original expectations agreed upon by two competent parties. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984). A forum selection clause can be unenforceable, however, for three reasons: "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought." *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (internal quotation marks and citations omitted). The burden rests with the



United States District Court
Northern District of California

United States District Court
Northern District of California

party seeking to escape the forum selection clause to show that an exception to enforcement applies. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

Following the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), "'[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 62). To contravene the strong public policy in favor of the selected forum, the plaintiff must "point to a statute or judicial decision that clearly states such a strong public policy." *Id.* at 1090. Examples include explicit anti-waiver statutes. *Id.* And while the Supreme Court has not directly interpreted this exception, "*Atlantic Marine* suggests it is difficult to satisfy." *Id.* at 1091.

Defendants argue that because the website's Terms of Use requires users to "consent to jurisdiction in Broward County Florida for all purposes," this dispute cannot be heard in California. *See* Jamal Decl. ¶ 4; Terms of Use § 1. Plaintiffs disagree for three reasons. First, they note that the forum selection clause only applies to disputes "arising out of the[] Terms of Use." Oppo. at 11. Because they believe that their complaint addresses "extra-contractual consumer statutory claims," plaintiffs urge me to read the phrase "arising out of" narrowly to exclude their claims. *Id.* Second, plaintiffs assert that even if the forum selection clause *did* cover this dispute, defendants have "failed to prove via the Faraaz Declaration that Plaintiffs have assented to it." *Id.* at 12. Finally, plaintiffs argue that the Ninth Circuit has recognized a "narrow public-policy exception to forum selection clauses for California statutory consumer claims brought by California residents (as Plaintiff Carter does here)." *Id.*at 13 (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083–84 (9th Cir. 2009) (per curiam)). None of these arguments has merit, and I address each below.

**A. "Arising Out Of"**

The forum selection clause provides exclusive jurisdiction for "any litigation instituted arising out of these Terms of Use." Terms of Use § 1. Plaintiffs' interpretation of this issue relies primarily on *Mediterranean Enterprises v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983),

United States District Court
Northern District of California

which held that the phrase "arising under" is "narrower in scope" than the phrase "arising out of or relating to." *Id.* at 1464 (discussing *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961)). The panel noted that "arising hereunder" was "synonymous" with "arising under the Agreement," and was "intended to cover a . . . narrow[] scope of disputes, *i.e.*, only those relating to the interpretation and performance of the contract itself." *Id.* Applying *Mediterranean Enterprises*, plaintiffs argue that their claims "do not seek enforcement of the terms . . . and instead relate to Defendants' marketing and conduct outside of the terms, such that the forum selection clause does not apply to these claims." Oppo. at 11.

The Terms of Use state that consumers who purchased from the Performance Golf website "consent to jurisdiction in Broward County Florida for *all purposes*," indicating that this clause was meant to be interpreted more broadly than the one in *Mediterranean Enterprises*. Terms of Use § 1. Even when construing the term "arising out of" narrowly, however, plaintiffs' central argument—that they were deceived into purchasing a Scratch Club subscription—squarely falls within the ambit of the Terms of Use. Section 2.1 of the Terms of Use discloses the 14-day free trial structure, expressly states that the "paying portion" of the membership "will begin 14 days after your trial has begun," and provides that memberships "automatically renew each month" and that Performance Golf will "continue to bill your Payment Method on a monthly basis" until the customer cancels. *Id.* § 2.1. Whether defendants deceived consumers through its website and marketing will inevitably require a court to consider what was represented to consumers at the point of purchase, including the Terms of Use. Because the Terms of Use discusses when and how users can cancel their subscriptions, plaintiffs' complaint "arises out of" the Terms of Use, even if not originally mentioned in the complaint.[4]

[4] Because the question of defendants' marketing around their subscription services is inevitably tied to Section 2.1 of the Terms of Use, the other caselaw cited by plaintiffs is inapposite. *See Rodriguez v. Abercrombie & Fitch Trading Co.*, No. 25-cv-1890-JES-DEB, 2026 WL 892830, at * (S.D. Cal. Mar. 30, 2026) (where the "complaint raises statutory claims, not claims to enforce the contract itself," such claims "are not founded in or intertwined with the terms of [use], as they arise solely from Defendant's representations regarding the Product's price on its public website at the time of [plaintiff's] purchase"); *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1126 (2025) (arbitration clause did not apply "in a dispute flowing, not from the contract where the arbitration clause appears, but from obligations imposed by statute or conventional fraud duties"); *Johnson v. Walmart, Inc.*, 57 F.4th 677, 682 (9th Cir. 2023) (clause unenforceable where "the Terms of Use

**B. Assent**

Plaintiffs' second argument focuses on the issue of assent. Plaintiffs assert that defendants "provide no proof that either of the Plaintiffs actually read or received copies of the terms of use, or whether and how Defendants' website actually presented these terms on the dates of their respective purchases." Oppo. at 12. In response, defendants point to the Declaration of Faraaz Jamal, Chief Operations Officer and Chief Financial Officer of both Blackfish and Performance Golf. Jamal Decl. ¶ 1. Jamal testified that at the time of each plaintiff's purchase, the website's checkout page contained Terms of Use that were "substantially similar to those currently available," including the provision that ""[e]xclusive jurisdiction for any litigation instituted arising out of these Terms of Use shall be solely and exclusively in the county or circuit courts of the state of Florida." *Id.* ¶ 2. "Based on [his] review of Performance Golf's standard checkout configuration in effect at that time," Faraaz confirmed that "the Website's checkout flow within Infusionsoft required customers to affirmatively check a box agreeing to the Terms of Use, presented by hyperlink, before an order could be submitted, and Plaintiff Peter Carter's order was completed under that flow." *Id.* So too was Fitkin's October 2024 purchase. *Id.* ¶ 11.

The Jamal Declaration confirms that the Terms of Use were present on the website at the time of plaintiffs' purchase, and that the plaintiffs assented to the Terms to purchase their products. *See id.* ¶ 6. Plaintiffs' own complaint corroborates this as it includes a screenshot depicting the February 2026 checkout page, which contained an "I agree to the terms and conditions" checkbox and hyperlink. Compl. ¶ 19. While plaintiffs argue that the use of a checkbox was "insufficient to provide consumers with adequate notice to assent" when they "believe [they are making] a single item [purchase or] a relatively trivial transaction," the caselaw they cite involved scenarios where *no* affirmative action was required by the users to assent to the Terms of Use. Oppo. at 12–13 (citing *Chabolla v. Classpass, Inc.*, 129 F.4h 1147, 1155 (9th Cir. 2025)). Here, the record shows that plaintiffs could not have purchased their products without

---

cover a defined subset of consumer interaction[s]" and dispute arose out of a separate service); *Clark-Alonso v. Sw. Airlines Co.*, 440 F. Supp. 3d 1089, 1095 (N.D. Cal. 2020) (Illston, J.) (forum selection clause unenforceable in a dispute arising out of communications related to the problem, as the "claim does not reference the [terms], nor does it have a logical or causal connection to those [terms]," making the "connection . . . too attenuated.").

affirmatively assenting to defendants' Terms of Use. That plaintiffs may not have read the Terms prior to assenting does not matter. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176–79 (9th Cir. 2014) (users need not read Terms of Use for their assent to be effective).

Considering the complaint and the Jamal Declaration, defendants have shown that the plaintiffs assented to the Terms of Use.

**C. California Subclass**

Plaintiffs finally argue that the Ninth Circuit has recognized a "narrow public-policy exception to forum selection clauses for California statutory consumer claims brought by California residents (as Plaintiff Carter does here). Oppo. at 14 (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083–84 (9th Cir. 2009) (per curiam); *Baton v. Ledger SAS*, No. 21-17036, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) ("forum-selection clauses are enforceable except with respect to Plaintiffs who are 'California resident plaintiffs bringing class action claims under California consumer law"). Plaintiffs argue that in such circumstances, "[t]he burden is on the defendants to show that enforcement of the forum selection clause will not subvert substantive rights afforded California citizens." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 895 (N.D. Cal. 2024) (Chen, J.).

Defendants have met their burden. As they note in their reply brief, "Florida is not categorically closed to consumer class actions, and nothing in the Terms forecloses application of California's substantive law to Carter's claims arising from a California-based transaction." Repl. at 6 (citing Fla. R. Civ. Proc. 1.220). Nor have plaintiffs "identified a single right they will lose by litigating in Florida." *Id.* Public policy accordingly does not favor Carter litigating this case in California. To the contrary, strong countervailing public policy favors enforcing the forum-selection clause and allowing this case to proceed in Florida.

Taken together, the record shows (1) this dispute "aris[es] out of" issues encapsulated in the Terms of Use; (2) plaintiffs assented to coverage under the Terms of Use; and (3) no public policy exception applies. Accordingly, this dispute cannot be heard in California. The motion to dismiss is GRANTED. I decline to reach the questions of personal jurisdiction or the merits of plaintiffs' complaint.

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss is GRANTED without leave to amend under Federal Rule of Civil Procedure 12(b)(1). The Clerk is instructed to close this case.

**IT IS SO ORDERED.**

Dated: November 5, 2026

William H. Orrick
United States District Judge